UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAVID WADDELL, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) No. 2:14-cv-105-JHR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant | ) |

*MEMORANDUM DECISION*[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the administrative law judge's physical residual functional capacity ("RFC") finding was marred by his misinterpretation of two reports of an agency examining consultant, Robert Klotz, P.A., and his erroneous rejection of the opinion of the plaintiff's examining consultant, orthopedic surgeon Robert N. Phelps, Jr., M.D. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 4-14. I find no reversible error and, accordingly, affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 13, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 18.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2014, Finding 1, Record at 13; that he had severe impairments of obesity, diabetes mellitus II, degenerative disc disease at L3-L4 with minor end-plate osteophyte formation, minor facet hypertrophy at L4-L5, and acute lumbar myofascial strain at L5-S1, Finding 3, *id.*; that he had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he could walk for two hours out of an eight-hour day, resting as needed or ceasing walking if chest pain developed, could stand for six hours in an eight-hour day and sit for six hours in an eight-hour day, and needed to be allowed to stand and stretch for five-minute breaks between normal breaks, adjust his seat position as needed, and alternate sitting and standing at will, Finding 5, *id.* at 15; that, considering his age (47 years old, defined as a younger individual, on his alleged disability onset date, March 4, 2009), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 19; and that he, therefore, had not been disabled from March 4, 2009, through the date of the decision, October 11, 2012, Finding 11, *id.* at 20. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Handling of Klotz Report

P.A. Klotz examined the plaintiff on July 19, 2010, and again on February 11, 2011. *See* Record at 299-301, 331-33. There was little change in his findings on examination or his opinion as to the plaintiff's RFC. *See id*. He noted that the plaintiff had lordosis in his back as well as "some point tenderness at the left lumbar paravertebral musculature." *Id*. at 300, 332. He found the plaintiff's range of motion and strengths (4 on a 5 scale) intact and equal bilaterally and added:

> He is able to squat and rise from that fully squatted position. Forward flexion, extension, side bending, rotation of the lumbar and cervical spine were normal. Gait is normal and he is able to toe and heel walk though reportedly with some increase in back discomfort.

*Id.* He concluded:

> At this point, primarily related to his obesity, potential hypertension and lack of conditioning, I would limit him to lifting and carrying as well as pushing and pulling no more than 30 pounds on an occasional basis.
>
> Some work hardening would be indicated. In light of that I would currently restrict him to no more than two hours in each of the following positions: Sitting, standing and walking. I do not see any clear postural limitation or any restriction on fine or gross motor functions. His ability to hear and speak is intact.

*Id.* at 301; *see also id*. at 333.[2]

With the benefit of review of the initial Klotz report, agency nonexamining consultant Iver C. Nielson, M.D., completed an RFC assessment dated August 5, 2010, in which he indicated that the plaintiff was capable of standing and/or walking with normal breaks for a total of about six hours in an eight-hour workday and sitting with normal breaks for about six hours in an eight-hour workday, although he needed to periodically alternate sitting and standing to relieve pain or discomfort. *See id*. at 319. He checked a box indicating that Klotz's conclusions were significantly different from his, explaining that Klotz's restrictions were "too harsh" in view of Klotz's normal findings on examination. *See id*. at 324. He also stated that the plaintiff had self-imposed standing/sitting limitations that were not fully supported by the objective evidence. *See id*. at 323.

With the benefit of review of both Klotz reports, agency nonexamining consultant Donald Trumbull, M.D., completed an RFC assessment dated March 3, 2011, in which he assessed the same sitting, standing, and walking capacities as had Dr. Nielson, with a need to stand for five minutes hourly between normal breaks and adjust sitting position as needed. *See id*. at 351. Unlike Dr. Nielson, he did not indicate that there was any medical source conclusion that was significantly different from his. *See id*. at 356. However, he noted that, in Klotz's second report, he had

---

[2] The name Richard S. Stockwell, D.O., appears below that of Klotz on the final page of both reports, although, as counsel for both sides acknowledged at oral argument, there is no electronic signature by either on those pages. *See* Record at 301, 333. The plaintiff took the position that Dr. Stockwell should be presumed to have endorsed both reports, *see, e.g*., Statement of Errors at 3, while the commissioner contended that the reports should be ascribed solely to Klotz, *see, e.g*., Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 14) at 2-3 n.1. The commissioner has the better argument. First, as she point outs, there is no indication that Dr. Stockwell signed the reports or participated in the examinations. *See id.*; Record at 299-301, 331-33. Second, as her counsel noted at oral argument, Klotz alone attested, in transmitting each report, that he had been authorized to examine the plaintiff and had produced a consultative examination report for him and that the report was accurate. *See* Record at 302, 334. The commissioner's counsel pointed out, in the interest of full disclosure, that Dr. Stockwell was listed as the payee for the consultative examinations. *See id*. at 303, 335. However, in view of the lack of any electronic signature by Dr. Stockwell, the lack of any indication that he participated in the examinations, and the fact that Klotz alone attested that he had examined the plaintiff and produced the reports at issue, I find that they are the reports solely of Klotz.

4

questioned the reliability of the plaintiff's history. *See id.* at 357. He also stated that his [Dr. Trumbull's] RFC assessment was "consistent with the objective evidence." *Id.*

Dr. Phelps submitted an RFC assessment dated May 17, 2012, to which he attached a report of a complete general medical physical examination of the same date. *See id.* at 415-23. He found, *inter alia*, that the plaintiff could sit for about six hours in an eight-hour workday but could only stand and/or walk for less than two hours in an eight-hour workday. *See id.* at 415.

Finally, medical expert William J. Hall, M.D., testified at the plaintiff's October 1, 2012, hearing. *See id.* at 11, 27. He found, *inter alia*, that the plaintiff could walk for at least two hours daily, but would have to rest as needed or cease walking because of his history of coronary artery disease, could stand for six hours of an eight-hour workday, with the ability to change positions or move about as needed to relieve or prevent discomfort in his lower back, and sit for six hours out of an eight-hour workday. *See id.* at 64-67. The administrative law judge questioned whether, with respect to standing, an ability to stand and stretch for five minutes hourly between normal breaks and adjust sitting positions as needed, which he noted he took from "7F2," or page 2 of Dr. Nielson's RFC assessment, would meet the plaintiff's needs, and Dr. Hall responded that it would. *See id.* at 69; *see also id.* at 319.

The administrative law judge transmitted, to a vocational expert present at hearing, a hypothetical question that he described as adopting Dr. Hall's RFC assessment with "the ability to stand and stretch for five minute breaks between normal breaks to address back pain and . . . to adjust in his sitting position as needed, that's at 11F2 [page 2 of the Trumbull RFC assessment], and at 7F2 [page 2 of the Nielson RFC assessment]." *Id.* at 72. He relied on the vocational expert's testimony in response to that hypothetical question to find the plaintiff not disabled at Step 5. *Compare id.* at 19 *with id.* at 74. He explained:

5

> Dr. Hall[] testified at the hearing that, based upon his review of the evidence and considering the [plaintiff's] testimony, the [plaintiff] retains the above capacity and that he has based this assessment on the opinions of physicians employed by the State Disability Determination Services (DDS) [the Nielson and Trumbull opinions]. These opinions w[ere] relied on in denying the [plaintiff's] application at the initial and reconsideration levels. The undersigned finds that nothing has been admitted into the record to indicate that the [plaintiff's] condition has worsened since these doctors conducted their reviews.

*Id*. at 16 (citations omitted). After summarizing the medical evidence of record, he stated:

> The undersigned finds that . . . Klotz's ex[amination] indicates that the [plaintiff's] back condition is stable as his findings remained unchanged. This exam indicates that the [plaintiff] is at least capable of performing light exertional work activities. Considering the [plaintiff's] allegations and the medical evidence in the light most favorable to the [plaintiff], the undersigned finds that [he] should also have the ability to sit/and stand at will and that he requires breaks to stand and stretch.

*Id*. at 18. He then went on to reject the Phelps RFC opinion. *See id*.

The plaintiff asserts that the administrative law judge's RFC determination must fail in that he chose to base it on the Klotz reports but erroneously described them as supporting a capacity to perform light work. *See* Statement of Errors at 4-6. He notes that Klotz's sitting, standing, and walking restrictions would not support a capacity to perform sedentary, let alone light, work. *See id.* at 5; Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 ("SSR 83-10"), at 29 (Sedentary work is "performed primarily in a seated position"; in sedentary jobs, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday"; "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

He argues that, pursuant to the so-called "*Chenery* doctrine," the decision must stand or fall on the basis of the rationale articulated by the administrative law judge, effectively excluding consideration of the Hall, Nielson, and Trumbull opinions. *See* Statement of Errors at 4 n.2; *Day*

6

*v. Astrue,* No. 1:12-cv-141-DBH, 2012 WL 6913439, at * 11 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd,* Jan. 18, 2013) ("Pursuant to the rule of *SEC v. Chenery Corp.,* 332 U.S. 194 (1947), a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker. An exception to the *Chenery* rule exists when a remand will amount to no more than an empty exercise because, for example, application of the correct legal standard could lead to only one conclusion.") (citations and internal punctuation omitted).

Nonetheless, as the commissioner points out, *see* Opposition at 4, the administrative law judge stated that Klotz's *examination* supported a capacity to perform light work, not Klotz's opinion, *see* Record at 18. This was a permissible finding, consistent with Dr. Nielson's criticism that, in light of Klotz's normal findings on examination, his assessed restrictions were "too harsh."[3] The commissioner concedes that the administrative law judge failed to address Klotz's opinions regarding the plaintiff's RFC. *See* Opposition at 3-4. Yet, as she argues, *see id.,* the error is harmless because the administrative law judge adequately explained why he rejected any opinion that the plaintiff could not perform light work.

First, while the administrative law judge did not explicitly assign weight to the opinions of Drs. Nielson, Trumbull, and Hall, he made clear that he relied on them. He relied on vocational testimony given in response to a hypothetical question in which he expressly adopted the Hall opinion, as supplemented by the Nielson and Trumbull opinions. *Compare* Record at 19 *with id.*

---

[3] In his statement of errors, the plaintiff took issue with Dr. Nielson's characterization of Klotz's findings on examination as "normal," pointing out that Klotz rated his strength as 4 on a 5 scale and noted discomfort with movement. *See* Statement of Errors at 10 n.5; Record at 332. Nonetheless, at oral argument, his counsel acknowledged that the Klotz examination findings were not "terribly abnormal." In any event, the plaintiff provides no persuasive basis on which to override Dr. Nielson's expert assessment. It is not self-evident that a finding of 4 in strength is abnormal or would result in functional limitations. And Klotz noted that the plaintiff's "[g]ait [was] normal and he [was] able to toe and heel walk though *reportedly* with some increase in back discomfort." *Id.* at 332 (emphasis added). Thus, he relied on the plaintiff's subjective report of back discomfort with movement. *See id.*

at 74. And, he noted in the body of his decision that nothing admitted into the record after the completion of the Nielson and Trumbull opinions indicated that the plaintiff's condition had subsequently worsened. *See id*. at 16.

Second, he explicitly rejected the opinion of Dr. Phelps, which was more restrictive than those of Drs. Nielson, Trumbull, or Hall. *See id*. at 18.

Finally, he discussed in some detail why, on the basis of the totality of the evidence, he declined to adopt greater limitations than those he assessed. *See* Record at 16-18. He noted, for example, that (i) a 2010 back x-ray revealed only minor abnormalities, (ii) the medical record documented only intermittent back symptoms, with the plaintiff sometimes reporting that he was symptom-free and able, as of July 2011, to walk about a half mile two to three times a day for exercise, and (iii) Klotz documented essentially normal findings on physical examination. *See id*. at 16-17.[4] He concluded:

> [T]he [plaintiff's] complaints of constant and incapacitating pain and fatigue are neither reasonably consistent with the medical signs and findings of record nor sufficiently credible as "additive" evidence to support a finding of disability. The discrepancies between his allegations and the objective medical record, supported by the treatment records of his physicians and the diagnostic evidence, cannot be resolved in the [plaintiff's] favor based on this record. Diagnostic testing has consistently been read as negative for any ongoing severe deformity or destructive process to explain the etiology of the [plaintiff's] subjective allegations.

*Id*. at 18.

In these circumstances, as the commissioner suggests, *see* Opposition at 3-4, it cannot be doubted that, if the administrative law judge had addressed the Klotz opinions, he would have rejected them to the extent inconsistent with his RFC determination. In this respect, as the

---

[4] For example, as the commissioner observes, *see* Opposition at 7, the plaintiff told his nurse practitioner in June 2011 that he was not experiencing any back pain as of that time, even when walking up and down a steep hill, *see* Record at 383, and, in July 2011, that he walked a half mile two or three times a day, *see id*. at 391. On the latter date, he also denied back pain, decreased range of motion, joint pain, and muscle pain or weakness, *see id*. at 392, and the nurse practitioner recorded normal findings on examinations of his spine, posture, gait, and extremities, *see id*. at 392-93.

8

commissioner argues, *see id.*, this case is materially indistinguishable from *Gendron v. Colvin*, No. 2:13-cv-00191-JAW, 2014 WL 1513350 (D. Me. Apr. 16, 2014), in which this court held that an administrative law judge's error in failing to address the opinion of a treating nurse practitioner was harmless when his discussion of the evidence as a whole made it clear that, if he had expressly addressed that opinion, he would have rejected it, *see Gendron*, 2014 WL 1513350, at *5.[5]

### B. Handling of Phelps Opinion

The administrative law judge stated that he did not give the Phelps opinion "significant probative value as it is not consistent with the record as a whole." Record at 18. He explained:

> The medical record and the reports of impartial medical examiners indicate that the [plaintiff] retains essentially normal physical examination findings. Moreover, even though this report is from a specialist, it is based in significant part on the [plaintiff's] subjective allegations, which are not consistent and not considered to be entirely credible. This examination was the only time Dr. Phelps examined the [plaintiff] and was performed at the request of the [plaintiff's] representative for the purpose of supporting the disability claim. The doctor specifically noted, in the introductory paragraph of his evaluation report, that he was not undertaking a treating relationship with the [plaintiff]. Therefore this report is more akin to an advocacy opinion than to objective evidence and, thus, is accorded little probative weight.

*Id*.

The plaintiff complains that the administrative law judge improperly rejected the Phelps opinion primarily on the basis that it was an "advocacy opinion" obtained by the plaintiff's counsel. *See* Statement of Errors at 7-8; *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.").

---

[5] In *Gendron*, the court held that the administrative law judge's discussion of the evidence sufficed to satisfy an adjudicator's duty, with respect to the opinions of "non-acceptable medical sources" such as nurse practitioners, to "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]" *Gendron*, 2014 WL 1513350, at *5 (quoting Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2013), at 333)). Klotz, a physician's assistant, is also a non-acceptable medical source. *See* 20 C.F.R. § 404.1513(a).

He disputes that the Phelps report was based in part on his subjective allegations but argues that, even if it was, the commissioner's own regulations state that an examining consultant must obtain a claimant's major or chief complaints. *See* Statement of Errors at 8; 20 C.F.R. § 404.1519n(c)(1)-(2).

Finally, he contests that the Phelps opinion was inconsistent with the record as a whole. *See* Statement of Errors at 8-13. He asserts that it was consistent with the two Klotz reports and a note from a treating source, a Dr. Candelore, indicating that he suffered from myospasm in the lumbar area. *See id*. at 8; Record at 291. He adds that the opinion was buttressed by objective evidence in the form of Dr. Phelps' own abnormal findings on examination. *See* Statement of Errors at 8-10.

The plaintiff acknowledges that the Phelps opinion is inconsistent with the Hall, Nielson, and Trumbull opinions. *See id*. at 10. However, he asserts that:

1. At no time did the administrative law judge state that he was relying on the Nielson, Trumbull, or Hall opinions. *See id*. at 11.

2. The Trumbull and Nielson opinions were based on a materially incomplete medical record, in that neither reviewed the detailed Phelps examination report, and it is impossible to know whether Dr. Hall reviewed the Klotz or Phelps reports because he never mentioned them. *See id*. at 11-13.

3. In any event, this was a case in which reliance on an examination, not a file review by a nonexamining consultant, was required. *See id*. at 13 (citing *Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir. 1994)).

He contends that the foregoing errors in assessing RFC rendered the vocational expert's testimony irrelevant, undermining the administrative law judge's Step 5 finding. *See id*. at 13-14.

10

He asserts that the errors were not harmless because, if, as found by Dr. Phelps and Klotz, the plaintiff was restricted to a limited range of sedentary work, he would have been found disabled pursuant to the so-called "Grid." *See id*. at 13-14.

These arguments are unavailing. As the plaintiff acknowledges, *see id*. at 10, an administrative law judge need not provide "good reasons" for rejecting an examining consultant's opinion, as he or she must in the case of a treating source's opinion, *see also*, *e.g., Tompkins v. Colvin,* No. 1:13-cv-73-GZS, 2014 WL 294474, at *3 (D. Me. Jan. 27, 2014) ("A onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons.") (citation and internal quotation marks omitted). However, he argues that, even so, "the duty to consider the opinion necessarily implies that it will be considered in a fair and reasonable way rather than in an arbitrary and capricious manner." Statement of Errors at 10.

At oral argument, the plaintiff's counsel contended that the administrative law judge made clear that he dismissed the opinion primarily, or even solely, because he considered it an "advocacy opinion," and that this impermissible bias sufficiently colored his adjudication of the case to warrant remand regardless of whether the error might otherwise be harmless or the decision otherwise supported by substantial evidence. He asserted that, in addition to ignoring Dr. Phelps' significant objective findings, which included abnormal findings on straight-leg raising, *see* Record at 420, the administrative law judge himself stated that he relied on the "advocacy" nature of the opinion to dismiss it, writing:

> This examination was the only time Dr. Phelps examined the [plaintiff] and was performed at the request of the [plaintiff's] representative for the purpose of supporting the disability claim. The doctor specifically noted, in the introductory paragraph of his evaluation report, that he was not undertaking a treating relationship with the [plaintiff]. *Therefore this report is more akin to an advocacy opinion than to objective evidence and, thus, is accorded little probative weight*.

11

*Id.* at 18 (emphasis added).

While this language, standing alone, does suggest that the purpose for which the opinion was obtained was the driving factor in the administrative law judge's rejection of it, the administrative law judge stated at the outset, "the undersigned has not granted Dr. Phelps's opinion significant probative value as it is not consistent with the record as a whole." *Id.* I understand him, thus, to have accorded equal weight to both factors. Moreover, he went on to cite, in additional support of his handling of the Phelps opinion, the fact that it rested in part on the plaintiff's subjective allegations, which he had found not to be entirely credible, and the fact that it was the product of a one-time examination. As the commissioner points out, *see* Opposition at 6, these are "well-recognized bases in Social Security law for rejection" of medical opinions, *see, e.g.*, *Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *3 (D. Me. Jan. 29, 2014).

The plaintiff's separate challenges to the findings that the Phelps opinion was inconsistent with the medical record and relied in part on subjective allegations, *see* Statement of Errors at 8-13, fall flat. As discussed above, the administrative law judge reasonably deemed the Phelps opinion inconsistent with other examining or treating source findings on testing and examination, including those of Klotz. The plaintiff concedes that the Phelps opinion is also inconsistent with the opinions of Drs. Hall, Nielson, and Trumbull. *See id.* at 10. He suggests that the inconsistency is of no moment because the administrative law judge did not rely on those opinions and, in any event, they were based on a materially incomplete record in the absence of review of the Phelps opinion and report. *See id.* at 10-13. However, as discussed above, it is reasonably clear that the administrative law judge did rely on those opinions. It is also reasonably clear that Dr. Hall reviewed the Phelps materials: he testified that he had been provided the opportunity to review the medical record in the case. *See* Record at 59. In addition, as the administrative law judge observed,

12

with the benefit of review of the complete medical record, Dr. Hall endorsed Drs. Nielson's and Trumbull's opinions. *See id.* at 16.[6]

It is further apparent that, while Dr. Phelps relied in part on his own findings on physical examination of the plaintiff, he also relied in part on the plaintiff's subjective allegations. As the commissioner points out, *see* Opposition at 6, Dr. Phelps' report contains several references to the plaintiff's subjective complaints and reports of limitations, for example, his description of his own limitations, *see* Record at 418-19, and of his professed inability to perform tasks and his pain on movement, *see id.* at 419-20. The plaintiff does not separately challenge the administrative law judge's determination that his allegations were only partially credible. *See generally* Statement of Errors; Record at 16.

Finally, the plaintiff's reliance on *Rose* for the proposition that it was error to rely on the opinions of nonexamining consultants in these circumstances, *see* Statement of Errors at 13, is misplaced. The illness at issue in *Rose* was chronic fatigue syndrome ("CFS"), a disease that the commissioner had recognized, in her Program Operations Manual System ("POMS"), is characterized by the presence of persistent, unexplained fatigue that may not produce abnormal findings on physical examination. *See Rose*, 34 F.3d at 16. In contravention of the POMS, nonexamining consultants in that case had "relied on what they discerned as a lack of objective

---

[6] In passing, the plaintiff also challenges reliance on the Nielson opinion on the basis that Dr. Nielson mischaracterized the Klotz findings as "normal," the Trumbull opinion in that Dr. Trumbull failed to note or explain significant differences between his opinion and those of Klotz, and the Hall opinion on the basis that Dr. Hall testified that he made no allowance in his RFC assessment for back pain because it occurred "unpredictably and periodically[,]" misunderstanding that a claimant's RFC represents what he or she can still do consistently over time despite his or her impairments. *See* Statement of Errors at 10 n.5. I have already addressed and rejected the criticism of the Nielson opinion. While Dr. Trumbull checked a box indicating that Klotz's conclusions about the plaintiff's limitations or restrictions did not differ significantly from his own, *see* Record at 356, he explained that he agreed with Klotz's questioning of the reliability of the plaintiff's history and that his (Dr. Trumbull's) RFC assessment was "consistent with the objective evidence." *Id.* at 357. While Dr. Hall testified that he omitted postural restrictions based on the unpredictable nature of the plaintiff's back pain, he testified that he did take back pain into account in assessing his RFC; for example, the need to change position to prevent or relieve low back pain. *See id.* at 67-68.

13

findings sufficient to prove the existence of significant fatigue." *Id*. at 19. The First Circuit observed:

> The question here is the extent to which claimant's fatigue in fact restricts his residual functional capacity. Such an inquiry – into the functional implications of a claimant's subjective symptoms – is the kind of inquiry for which on-the-spot examination and observation of claimant might ordinarily be thought important. The subjective severity of a claimant's fatigue associated with CFS is not something readily evaluated on an algid administrative record.

*Id*. at 19 (citation and internal quotation marks omitted). However, the illness at issue here is a back impairment, and the plaintiff cites to no POMS section or other authority indicating that reliance on the opinions of nonexamining consultants is misplaced with respect to assessment of the functional effects of that malady.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 14th day of April, 2015.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge